UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

PHILLIP GENE VICE,

    Plaintiff,

V.

HIGH SHERIFF RODNEY COFFEE, et al.,

    Defendants.

Civil Action No. 5: 16-162-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants James Botts, Rodney Coffee, Barry Thacker, and Kenneth Scarberry have filed motions to dismiss the complaint filed by plaintiff Phillip Gene Vice. [R. 28, 29] Defendants contend that Vice's complaint is barred by the applicable one-year statute of limitations and that he has failed to substantiate his claim that he was of unsound mind from 2011 to 2016 as required to equitably toll the running of the statute of limitations during that period. Vice has filed his response to their motions, to which the defendants have replied. [R. 31, 32] The motion is therefore ripe for decision.

**I**

On May 25, 2011 Menifee County Deputy Thacker arrested Vice along with six other persons. The next day state charges were filed against Vice for trafficking in a controlled substance, cultivating marijuana plants, possessing drug paraphernalia, endangering the welfare of a minor, and cruelty to animals. [R. 28-2] On July 20, 2011 the state charges were dismissed without prejudice in light of a pending federal prosecution. See [R. 28-5] *Commonwealth v. Vice*,

No. 11-F-00030 (Menifee Dist. Ct. 2011). See https://tinyurl.com/y7bz9js5 (last visited on December 16, 2018).[1]

On December 1, 2011, Vice was indicted in this Court for manufacturing over 1000 marijuana plants, conspiracy and possession with intent to distribute oxycodone, and being a felon in possession of numerous firearms. Facing a sentence of ten years to life imprisonment in light of his prior criminal convictions, Vice agreed to plead guilty to a single count of manufacturing more than 100 marijuana plants in exchange for the dismissal of the other charges. As part of the plea agreement, Vice agreed to forfeit his interest in the five firearms discovered upon his arrest and listed in the indictment. During a March 26, 2012 hearing to consider that plea, Judge Coffman of this Court questioned Vice extensively regarding his personal and medical history, and concurred with his attorney that he was competent to enter a guilty plea that day.

An initial sentencing hearing was held on July 5, 2012, a date which was already more than one year after his May 2011 arrest and the events about which he complains in this civil action. During that hearing, in response to a sentencing issue raised by the Court, Vice again gave lucid and cogent testimony regarding the presence of firearms in close proximity to the drugs seized. Specifically, he stated:

---

[1] A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including proceedings in other courts of record, *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). Such records and information on government websites are self-authenticating. *See* Fed. R. Evid. 902(5); *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself."). The Court may consider such information when determining whether a claim must be dismissed for failure to state a claim under Rule 12(b)(6) without converting the motion into one for summary judgment under Rule 56. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

> When I arrived and entered a guilty plea, I was under the impression I was pleading to the marijuana charge, not to gun charges and pill charges. And those guns all belonged to my little boy. They wasn't used to protect nothing. They was set in the safe and had never been loaded or nothing. They belonged to my son. They wasn't there for protection. And the handgun they found under the mattress, there was seven people in that trailer whenever I was arrested, and I don't know whose gun it was. It didn't belong to me. It wasn't my son's. I don't know how it got there.

At the final sentencing hearing held on July 26, 2012, Vice was sentenced to 120 months imprisonment. *United States v. Vice*, No. 5: 11-CR-152-DCR-CJS (E.D. Ky. 2011) [R. 1, 17, 22, 28, 37, 47, 66 therein]. At no time during these criminal proceedings did Vice or his counsel ever suggest that he was not competent to enter his plea.

In addition, in the months and years following his federal sentencing, Vice sent numerous letters and motions to the Court in his criminal case. In a December 2012 letter Vice offered to provide information regarding oxycodone trafficking by doctors in Menifee County in an effort to get a reduced sentence. In a March 2013 motion Vice sought the appointment of counsel to assist him in filing a motion under 28 U.S.C. § 2255. In that letter he also complained of the actions of the Menifee County Sheriff's Department and "dog pound employees," and alleged that Deputy Botts had procured false testimony against him. *Id*. at R. 41, 43.

In May 2013, Vice also filed a motion requesting the return of some of the property that was seized from his home in May 2011 by Botts and Scarberry, including nine allegedly "vintage coins" and one of the firearms. The Court denied that motion shortly thereafter, noting that Vice had forfeited any interest in the gun as part of his plea agreement, and the "vintage coins" were, in fact, merely spare change that Vice had given to a confidential informant during a controlled buy. *Id*. at R. 48-51.

In June 2013, Vice filed a *pro se* motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. That § 2255 motion asserted four distinct claims, contained extensive factual and legal argument, and included numerous exhibits. Over the next ten months Vice also sought legal relief in numerous forms while acting *pro se*: he filed a motion to proceed *in forma pauperis*, twice requested a transcript, amended his petition to include additional (and fully briefed) grounds for relief, moved to strike the government's response as untimely, requested an extension of time to respond, filed a motion for judgment in his favor (containing 47 pages of argument with extensive citation to relevant legal authority and 43 pages of exhibits), and testified at an evidentiary hearing in December 2013. In March 2014 Vice filed his own *pro se* objections (in addition to those filed by his newly-appointed attorney) to a magistrate's recommendation that his § 2255 motion be denied. He also filed a *pro se* notice of appeal in April 2014, and a petition for a writ of *certiorari* in December 2014 from the Sixth Circuit's denial of a certificate of appealability. *Id*. at R. 52-55, 58-59, 62, 65, 69, 74, 76-80, 82, 107-108, 111, 119. Vice also filed a motion to amend and expand his prior § 2255 motion in April 2015; a motion to appoint counsel in May 2016; and motions to reduce his sentence pursuant to 18 U.S.C. § 3582(c) in October 2015 and again in December 2016. *Id*. at R. 125-126, 131, 134, 136.

## II

In May 2016 Vice filed his complaint in this action. Vice alleged that during his arrest in May 2011, he was handcuffed and placed in a chair on a nearby embankment. Vice stated that the chair broke, causing him to fall over the embankment and hit the ground, causing neck and back pain in the process. Vice was taken to the emergency room, examined, and then apparently released the same day. [R. 1 at Page ID# 5] Vice alleges that the state drug trafficking charges

4

were fabricated or "trumped up" by Deputy Botts and U.S. Forestry Agent Kenneth Scarberry. *Id*. at 2, 5. As noted above, the state charges were dismissed without prejudice in July 2011 in anticipation of federal charges. Vice also alleged that while he was in jail, the defendants searched his home but failed to secure it, resulting in the theft of $700,000 worth of unidentified "collectibles," several dogs and antique guns. Vice states that some of these items were taken by the police; it is unclear if his reference to "vandals" suggests that his home was also burglarized or whether the items were merely confiscated by police. [R. 1 at Page ID# 2-3, 5-6] Vice claims that the defendants' actions violated his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and constitute the torts of false arrest, false imprisonment, assault and battery, malicious prosecution, abuse of process, negligence, and gross negligence under Kentucky law. *Id*. at 3, 7-8.

But the statute of limitations for constitutional claims arising in Kentucky and asserted under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) is just one year. See Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Vice's federal claims related to his arrest and back injury accrued in May 2011. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues."). Because Vice did not file suit until five years later, in June 2016 the Court concluded that his claims were time-barred upon initial screening. The Court therefore dismissed his federal claims with prejudice, and dismissed his state law claims without prejudice pursuant to 28 U.S.C. § 1367(c). [R. 6]

On direct appeal Vice contended for the first time that his claims were timely filed under the fraudulent concealment doctrine or under a "continuing violations" theory, positions he supported by argument and citation to relevant authority. In his appellate brief, Vice also argued (amongst other things) that the statute of limitations should have been tolled pursuant to Ky. Rev. Stat. 413.170(1), which applies where the plaintiff is of "unsound mind," based upon his "recent" diagnosis for schizophrenia. [R. 7, 10, 11] The Sixth Circuit agreed that Vice's claims are time-barred absent tolling, but remanded with directions for the Court to provide Vice with notice and an opportunity to be heard for him to establish that he is entitled to equitable tolling.[2] [R. 13]

In their motions for summary judgment, the defendants correctly note that Vice's § 1983 claims accrued at different times. Any claim directly related to his initial arrest and injury accrued on May 25, 2011. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Vice's claims for false arrest and false imprisonment accrued when he was arraigned on state charges on May 31, 2011. *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). And his malicious prosecution claim accrued no later than when his state charges were formally dismissed on November 4, 2011. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). [R. 28-1 at Page ID #104-105] Finally, the remaining tort claims asserted by Vice under Kentucky law are governed by the one-year

---

[2] The defendants point out that ordinarily when reviewing the dismissal of a complaint, the Sixth Circuit "will not entertain on appeal factual recitations not presented to the district court any more readily than it will tolerate attempts to enlarge the record itself." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, it reviews only "... all facts "from the [c]omplaint, since those were the facts available to the district court." *Williams v. Curtin*, 631 F.3d 380, 382 (6th Cir. 2011). Here the Sixth Circuit did acknowledge facts asserted by Vice for the first time on appeal. However, it appeared to do so only to conclude that Vice had asserted a defense that, as a procedural matter, he was entitled to develop prior to dismissal of his complaint, *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009), not to determine the substantive question of whether Vice's complaint was timely filed.

limitations period found in Ky. Rev. Stat. 413.140(1), and likewise accrued in 2011 and 2012. [R. 28-1 at Page ID #106-107] Even beginning at the most recent of these dates, the complaint Vice filed in May 2016 was filed nearly four years after the statute of limitations had expired.[3]

Unless, of course, Vice is entitled to equitable tolling. While accrual of a claim under Section 1983 is a matter of federal law, state tolling rules apply to claims arising under both state law and under Section 1983. *Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017). Vice invokes a Kentucky statute which provides that:

> If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 ... was, at the time the cause of action accrued, an infant or of unsound mind, the action may be brought within the same number of years after the removal of the disability or death of the person, whichever happens first, allowed to a person without the disability to bring the action after the right accrued.

Ky. Rev. Stat. 413.170(1). As the party requesting equitable tolling pursuant to the statute, Vice bears the burden of showing that it applies. *Southeastern Kentucky Baptist Hosp., Inc. v. Gaylor*,

---

[3] The defendants also assert that if any of Vice's claims (whether for false arrest, false imprisonment, or malicious prosecution) are based upon his federal, rather than state, prosecution, they would have accrued when he pled guilty in federal court on March 26, 2012, and when the other federal charges were dismissed pursuant to the plea agreement on July 26, 2012. [R. 28-1 at Page ID# 104-105] To the extent such claims would be based upon those federal charges that were dismissed, they too would be barred by statute of limitations. To the extent such claims would be based upon the drug trafficking charge to which Vice pled guilty, he has not established that said conviction has been reversed or set aside, and hence the claim would be barred as prematurely filed under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Of course, the dates and events Vice set forth in his complaint related solely to his state prosecution, and he made no mention whatsoever of his federal prosecution. There is therefore no basis to conclude that any of his claims were predicated upon it. In his most recent response Vice purports to "explain" the factual basis for each of his claims, asserting that some were based upon the abandoned state prosecution and some upon the completed federal prosecution. [R. 31 at Page ID# 170-171] But his present assertions and characterizations are based upon factual allegations that were never mentioned in his original complaint and in some instances are inconsistent with it. The express statements in Vice's complaint, not his present characterizations, governs the proper understanding of the basis for his claims. Regardless, should another court view the nature of the claims in the complaint differently, the principles stated above should establish alternative grounds to conclude that any claims arising from his federal prosecution are subject to dismissal.

756 S.W.2d 467, 469 (Ky. 1988) ("Once the statute of limitations is raised, the burden falls on the complainant to prove such facts as would toll the statute.").

To carry that burden, he must first show that he was of "unsound mind" and that such condition existed "at the time the cause of action accrued." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 297 (Ky. App. 2015). To demonstrate that he was of "unsound mind" a plaintiff must provide "hard evidence" that he was "rendered incapable of managing his own affairs." *Gaylor*, 756 S.W.2d at 469. If he meets that burden, he must further show that once the disability was lifted, he filed suit within the limitations period. *Powell v. Jacor Communications Corp.*, 320 F.3d 599, 603-04 (6th Cir. 2003); *Anderson v. Speedway SuperAmerica, LLC*, No. 05-57-DLB, 2007 WL 710164, at *2 (E.D. Ky. Mar. 6, 2007).

The Sixth Circuit's docket does not appear to indicate that while the case was on direct appeal Vice offered any "hard evidence" to support his claim that he was of unsound mind. In response to the defendants' motions, Vice self-reports that he became schizophrenic on May 25, 2011 as a result of his fall from the chair. [R. 31 at Page ID# 172] To support this claim, Vice has included three pages of unauthenticated medical records by mental health staff at the Bureau of Prisons. Those records indicate that on three occasions from October 2014 to April 2015 Vice told staff that he was seeing animals, volcanos and hieroglyphs on rocks in the prison. However, upon examination Vice was found to be alert, oriented, and responsive. Staff noted that Vice's anxiety and self-reported visual hallucinations were being managed with medication (Venlafaxine, an anti-depressant) and that they "did not appear to hamper his ability to function on the compound." [R. 31-1 at Page ID# 182-184]

8

The Court concludes that Vice has failed to carry his burden of establishing that he was of "unsound mind" as required to toll the running of the limitations period. First, as noted above, Kentucky law requires the plaintiff to show that he was of unsound mind "at the time the cause of action accrued." *Rigazio*, 853 S.W.2d at 297. Vice offers only his unsupported allegation that he became schizophrenic in May 2011 as a result of the fall. But as noted above, in March 2012 after communicating with Vice this Court found him to be competent to stand trial. It is true, of course, that a criminal defendant may be competent because he can "understand the charges against him and assist in his own defense" while still being "incapable of managing his affairs." *Gray v. Lexington-Fayette Urban Co. Gov't.*, No. 5:13-45-DCR, 2013 WL 3322609, at *7 (E.D. Ky. July 1, 2013). But the competency finding does provide some evidence that Vice was of sound mind, *id.* at *7, particularly when coupled with Vice's lucid statement during his first sentencing hearing in July 2012.

The only objective evidence offered by Vice is mental health records from 2014. [R. 31-1 at Page ID# 182-184] But these records are both unauthenticated and unexplained by an affidavit or declaration from one of the mental health professionals who was treating Vice. In addition, they indicate that notwithstanding his self-reported symptoms Vice was adequately managing his affairs within the prison. Finally, the records relate to his condition in 2014, a period two to three years after Vice's claims had accrued and after the statute of limitations had already run. Vice therefore fails to satisfy the threshold criteria that he was of unsound mind when his claims first accrued. *Gaylor*, 756 S.W.2d at 469 (holding that letter alone, unsupported by psychiatrist's declaration or affidavit, was insufficient to establish that plaintiff was of unsound mind); see also

*McCord v. Bd. of Educ. of Fleming Co., Ky.*, No. 17-5548, 2018 WL 1724560, at *4 (6th Cir. Jan. 30, 2018).

The Court further finds that the evidence will not support the conclusion that Vice was of unsound mind during any period from mid-2011 through mid-2016. It is Vice's obligation to provide "hard evidence" that he was "incapable of managing his own affairs." *Gaylor*, 756 S.W.2d at 469. While the standard speaks broadly of a plaintiff's ability to manage his "affairs," because the rule has the effect of extending a statutory limitations period within which the plaintiff must file a lawsuit, no better evidence can be found against which to test that standard than the plaintiff's ability to initiate or participate meaningfully in litigation. As noted above, from his plea hearing in March 2012 until his sentencing in July 2012, Vice was an active and aware participant in the criminal proceedings against him. *United States v. Vice*, No. 5: 11-CR-152-DCR-CJS (E.D. Ky. 2011) [R. 1, 17, 22, 28, 37, 47, 66 therein] And even after sentencing, from mid-2012 through mid-2016 Vice, acting *pro se* , filed several dozen letters, motions, requests, and appeals in an effort to obtain post-conviction relief, with those submissions consistently demonstrating that Vice understood the pertinent facts, had performed extensive legal research, and set forth arguments relevant to his claims for relief. *Id*. at R. 41, 43, 48-55, 58-59, 62, 65, 69, 74, 76-80, 82, 107-108, 111, 119, 125-126, 131, 134, 136.

These numerous filings amply demonstrate that Vice was more than capable of filing a civil suit with respect to his claims in the years before he finally filed suit in 2016. Indeed, in a "notification" filed in his direct appeal in this case, Vice told the Sixth Circuit that he had previously tried to do just that. Vice stated that on April 11, 2013 – a date just short of two years after his May 2011 arrest and thus within the limitations period referenced in 28 U.S.C.

§ 2401(b) – he actually did file a claim based upon his current allegations with the "General Counsel," likely referencing an effort to administratively exhaust a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80. *Vice v. Coffee*, No. 16-5866 (6th Cir. 2016) [R. 7 at pg. 3 therein]

These facts conclusively undermine any suggestion that Vice was of "unsound mind" starting in May 2011 and continuing for at least four years until May 2015. Accordingly, Vice is not entitled to equitable tolling pursuant to Ky. Rev. Stat. 413.170(1), and his complaint filed in May 2016 is barred by the one-year statute of limitations found in Ky. Rev. Stat. 413.140(1). *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001). The Court will therefore grant the defendants' motions and dismiss the plaintiff's complaint.

Accordingly, it is **ORDERED** as follows:

1. The motions of James Botts, Rodney Coffee, Barry Thacker, and Kenneth Scarberry to dismiss the complaint [R. 28, 29] are **GRANTED**.

2. Vice's complaint [R. 1] is **DISMISSED WITH PREJUDICE**.

3. The Court will enter an appropriate judgment.

Entered: January 3, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

12